IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:                     )
                                      )
GEOFFREY & REBECCA BASLER,            )      CASE NO. BK10-43471-TJM
                                      )
                Debtor(s).            )           CH. 7

ORDER

Hearing was held on February 9, 2011, on Pinnacle Bank's objection to exemptions (Fil. No. 35) and the debtors' resistance (Fil. No. 50). Shawn M. Grimsley appeared for the debtors, and Rick D. Lange appeared for Pinnacle Bank. Supplemental materials have been filed and the matter is now ready for decision.

The objection is overruled.

On Schedule C, Property Claimed as Exempt, the debtors assert exemptions in a life insurance policy and in a homestead. A creditor, Pinnacle Bank, objects to these claimed exemptions.

I.      Legal standard

A debtor's bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Bankruptcy Code allows a debtor to exempt certain property from the bankruptcy estate. § 522(b). "[E]xemptions represent the debtor's attempt to reclaim those assets, or more often, certain interests in those assets, to the creditors' detriment. Schwab v. Reilly, ___ U.S. ___, 130 S. Ct. 2652, 2663-64 (2010). Under § 522(b), a state may opt out of using the federal exemptions listed in § 522(d). "A debtor whose domicile is in a state that has opted out of the federal Bankruptcy Code exemptions is limited to the exemptions applicable under federal law other than § 522(d) and the laws of such state and locality. 11 U.S.C. § 522(b)(2) and (3)." Moon v. Hurd (In re Hurd), 441 B.R. 116, 119 (B.A.P. 8th Cir. 2010). In this case, the debtors are domiciled in Nebraska, which has opted out of the federal exemptions. Neb. Rev. Stat. § 25-15,105.[1] Accordingly, state law governs the exemptions. Hurd, 441 B.R. at 119 (citing Norwest Bank Nebraska, N.A. v. Tveten (In re Tveten), 848 F.2d 871, 873 (8th

---

[1] That section provides as follows:

The federal exemptions provided in 11 U.S.C. 522, subsection (d), are hereby rejected by the State of Nebraska. The State of Nebraska elects to retain the personal exemptions provided under Nebraska statutes and the Nebraska Constitution and to have such exemptions apply to any bankruptcy petition filed in Nebraska after April 17, 1980.

Cir. 1988)). As the objecting party, Pinnacle Bank bears the burden of proving that the exemptions are not properly claimed. Fed. R. Bankr. P. 4003(c).

II.    Exemption in homestead

The debtors have claimed a homestead exemption[2] in their Lincoln residence. The property is not titled in the debtors' names. Rather, it

> is nominally owned by Ruby Properties, LLC[,] a wholly owned Nebraska limited liability company of the Debtors. Its separateness may be disregarded by the Court . . . . [The debtors] treat assets titled to Ruby as theirs and disclose them accordingly [in the schedules]. Ruby is treated as if it was substantially consolidated with Debtors for the purpose of this Petition Schedule.

Schedule B, line 13k1 (Fil. No. 22).

The question before the court is whether the debtors, despite not holding legal title to the real estate, nevertheless have an exemptible interest in it.

The debtors purchased the residence in July 2004. They received a warranty deed in their individual names as joint tenants with right of survivorship. In September 2004, they deeded the property to Ruby Properties, LLC. The debtors are the sole members of Ruby Properties. According to the debtors, the home's purchase was financed by a loan currently held by Mutual of Omaha Bank on which the debtors are the borrowers. Payments on that promissory note have come from the debtors and from Ruby Properties.

One of the debtors' arguments in support of the exemption is that Ruby Properties dissolved upon the members' bankruptcy filing, so the company's assets, including this residence, belong to the debtors and may be claimed as exempt. However, the company's operating agreement requires certain affirmative steps to be taken to dissolve the company and distribute the assets, and those actions have not occurred, so the real estate still belongs to Ruby Properties.

Long-standing Nebraska law holds that "a debtor need not be the absolute owner in fee in order to establish a homestead right in land, . . . [but] any estate or interest in lands which gives the right of occupancy or possession is sufficient, if coupled with requisite occupancy" to support a homestead exemption. In re Foley, 97 F. Supp. 843, 845 (D. Neb. 1951); Giles v. Miller, 54 N.W. 551, 552 (Neb. 1893). As such, the homestead exemption statute is broad enough to "protect the temporary interests of the leaseholder." Foley, 97 F. Supp. at 845 (holding that a month-to-month lease of a space in a trailer court supported a homestead exemption); In re Buzzell, 110 B.R. 440

---

[2]The exemption was claimed pursuant to Neb. Rev. Stat. § 77-3506, which was repealed in 1983. The debtors presumably intended to claim the exemption under the statutory authority of Neb. Rev. Stat. § 40-101.

-2-

(Bankr. D. Neb. 1990) (holding that a life estate in the property on which a mobile home sat supported a homestead interest).

The court is obligated to liberally construe the homestead exemption statute. <u>Landon v. Pettijohn</u>, 438 N.W.2d 757, 761 (Neb. 1989). It is undisputed that the debtors exclusively occupy the residence, and have since August 2004. There is no evidence of a lease of the property from Ruby Properties to the debtors, but it is clear that the debtors are residing there with the tacit agreement of Ruby Properties, which essentially is the debtors themselves. Whatever legal arrangement this may constitute, it appears to be something more than a tenancy at will, which is insufficient to support a homestead claim. <u>Howard v. Raymers</u>, 89 N.W. 1004, 1005 (Neb. 1902) (holding that mere permissive residence on another's property does not bestow a homestead interest). Rather, it must be in the nature of a long-term lease, on which the debtors may claim a homestead exemption. <u>See</u> <u>Foley</u> and <u>Buzzell</u>, <u>supra</u>.

III.    Exemption in life insurance policy

The debtors also claim an exemption in life insurance under Neb. Rev. Stat. § 44-371.[3] The

---

[3]That section, in relevant part, states:

44-371. Annuity contract; insurance proceeds and benefits; exempt from claims of creditors; exceptions
    (1)(a) Except as provided in subdivision (1)(b) of this section, all proceeds, cash values, and benefits accruing under any annuity contract, under any policy or certificate of life insurance payable upon the death of the insured to a beneficiary other than the estate of the insured, or under any accident or health insurance policy shall be exempt from attachment, garnishment, or other legal or equitable process and from all claims of creditors of the insured and of the beneficiary if related to the insured by blood or marriage, unless a written assignment to the contrary has been obtained by the claimant.
    (b) Subdivision (1)(a) of this section shall not apply to:
        (i) An individual's aggregate interests greater than one hundred thousand dollars in all loan values or cash values of all matured or unmatured life insurance contracts and in all proceeds, cash values, or benefits accruing under all annuity contracts owned by such individual; and
        (ii) An individual's interest in all loan values or cash values of all matured or unmatured life insurance contracts and in all proceeds, cash values, or benefits accruing under all annuity contracts owned by such individual, to the extent that the loan values or cash values of any matured or unmatured life insurance contract or the proceeds, cash values, or benefits accruing under any annuity contract were established or increased through contributions, premiums, or any other payments made within three years prior to bankruptcy or within three years prior to
                                                                (continued...)

-3-

policy is owned by Dr. Basler and is a policy on his life. Pinnacle Bank objects to the debtors' attempt to each claim an exemption in that policy, as it is owned by only one of the debtors. Pinnacle Bank also seeks clarification from the debtor as to whether any premiums, contributions, or other payments on the policy were made within the three years prior to the petition date.

Statutory language is to be given its plain and ordinary meaning, and a court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. McNally v. City of Omaha, 731 N.W.2d 573, 583 (Neb. 2007). Contrary to the debtors' position, the statute is clear on its face that only the policy owner may claim the exemption: "An individual's aggregate interests greater than one hundred thousand dollars in all loan values or cash values of all matured or unmatured life insurance contracts . . . owned by such individual" are not exemptible. Moreover, the exemption section of the Bankruptcy Code applies separately to each debtor in a joint case; there is no allowance for "doubling up" on exemptions. § 522(m).

The question then becomes how much of the policy's value may be exempted by Dr. Basler. Dr. Basler purchased a modified whole-life group life insurance policy from American National Insurance Company in December 2002. The benefit amount was $6,999,945. The policy required 12 annual premium payments of $41,791.20, and three "unscheduled" premium payments of $125,760.56 each during the first three years of the policy. The debtor paid the unscheduled premiums in 2002, 2003, and 2004. He paid eight annual premiums from December 2002 through December 2009. The Chapter 7 petition in this case was filed on November 18, 2010.

Section 44-371(1)(b)(ii) prohibits the exemption of policy loan values or cash values established or increased through contributions, premiums, or other payments within three years prior to bankruptcy, so any premium payments made after November 2007 must be subtracted from the policy's value. That would consist of $125,373.60 in total annual premium payments made in 2007, 2008, and 2009 (the $41,791.20 annual premium paid in each of the three years). The payments made prior to the cut-off date, from 2002 through 2006, totaled $586,237.68.

However, the debtor borrowed money from a bank using the policy as collateral, and also borrowed from the cash value of the policy. In 2010, prior to filing bankruptcy, the debtor withdrew $613,049.23 of the policy's cash value to pay off the bank and the insurance company for the loans. As of October 21, 2010, the cash value of the policy was $178,418.13.

The purpose of the monetary and temporal limitations enacted in § 44-371 is to prevent debtors from loading up on exempt assets such as annuities and life insurance policies in contemplation of bankruptcy at the expense of their creditors. See In re Armstrong, 93 B.R. 197, 202 (Bankr. D. Neb. 1988) ("[I]n the face of creditor concerns about the abuse of the statutory provision which is being considered in this case, the Nebraska Legislature acted and put a cap upon the amount of an annuity which can be considered as exempt from creditor's claims. See Neb. Rev. Stat. § 44-371 (Supp. 1987).").

---

[3](...continued)
entry against the individual of a money judgment which thereafter becomes final.

That concern about abusive practices by debtors on the eve of bankruptcy is not an issue with regard to this life insurance policy. The debtor did not attempt to protect cash assets by paying up his premiums and converting them into an exemptible asset; rather, he depleted the cash surrender value of the policy in the months preceding his bankruptcy filing. Therefore, pursuant to Neb. Rev. Stat. § 44-371(1)(b)(i), he may claim an exemption of no more than $100,000 in the unencumbered value of the policy.

IT IS ORDERED: Pinnacle Bank's objection to exemptions (Fil. No. 35) is overruled as to the homestead exemption. Pinnacle Bank's objection to exemptions (Fil. No. 35) is overruled as to the life insurance exemption, to the extent that Dr. Basler, as the owner of the life insurance policy, may exempt a maximum of $100,000 of the unencumbered value of American National Insurance Company policy number 0246.

DATED:        March 10, 2011

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    Shawn M. Grimsley
    *Rick D. Lange
    United States Trustee

Movant (*) is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.