IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-43471-TJM |
| | ) | |
| GEOFFREY C. BASLER and | ) | CH. 7 |
| REBECCA J. BASLER, | ) | |
| | ) | |
| Debtor(s). | ) | |

## ORDER

Hearing was held in Lincoln, Nebraska, on June 29, 2011, regarding Fil. #162, Motion to Compel Debtors' Production of Documents, filed by Dana F. Cole & Company, LLP; Fil. #171, Objection, filed by the debtors; and Fil. #188, Joinder in Motion to Compel Debtors' Production of Documents, filed by First National Bank of Omaha. Brian Jorde appeared for the debtors, Albert B. Kerkhove appeared as special tax counsel for debtors, Robert J. Becker appeared for the Chapter 7 Trustee, Thomas D. Stalnaker appeared as Chapter 7 Trustee, Jerry L. Jensen appeared for the U.S. Trustee, Krista Kester appeared for Dana F. Cole & Company and First National Bank of Omaha, Richard Garden appeared for Midwest Bank, N.A., Joel Lonowski appeared for Security First Bank, Robert Creager appeared for First State Bank, Trev Peterson appeared for Nebraska Bank of Commerce, and Victor Covalt appeared for Dave and Emilie Ellingson.

In this Chapter 7 case, the First National Bank of Omaha, a creditor, obtained authorization to take a Rule 2004 examination of the debtors. In preparation for such examination, counsel for the bank requested counsel for the debtors to supply numerous documents concerning the debtors' financial affairs, including income, expenses, investments and liabilities of the debtors individually, and of the various businesses that the debtors are involved in. When only a limited number of documents were initially provided, counsel for the bank requested that counsel for the debtors take another look and provide all of the documents that had been requested.

In response, counsel for the debtors informed counsel for the bank that there were numerous boxes of documents and the bank, through its counsel, could go through the boxes and determine what documents the bank wanted. The correspondence from counsel for the debtors indicated that documents covered by the attorney-client privilege or the work product doctrine would be withheld.

Counsel for the bank accepted the offer, traveled to the office of counsel for the debtors and went through all of the boxes of documents that were made available to them. Hundreds, if not thousands, of documents were marked for copying, and counsel for the debtors was informed that a copying vendor would pick up the documents later that day.

When counsel for the bank returned to their Lincoln office, they were informed that counsel for the debtors had reviewed all of the marked documents and removed four documents which counsel claimed were inadvertently disclosed and were subject to the attorney-client privilege or the work product doctrine. Counsel for the bank disputed the "inadvertent disclosure" theory and asserted that all privileges had been waived because all the documents, including the four now being withheld, had been disclosed to the bank.

After some discussion, this motion to compel discovery was filed by another client of the law firm and eventually the bank joined in the motion.

Hearing was held and counsel for the debtors reiterated his position that the four items being withheld had been inadvertently disclosed and were subject to the privileges. The Chapter 7 trustee joined in the resistance on the theory that upon the debtors' filing of a Chapter 7 petition, any privileges with regard to such documents belonged to the trustee, since the documents became property of the bankruptcy estate. The trustee had not waived any privileges and would not do so.

Counsel for the movants presented several hundred documents as examples of documents which had been disclosed, but which obviously were a work product or covered by the attorney-client privilege. Those documents are included in Fils. #192, #199, #200, #201, and #202.

The amended privilege log provided by counsel for the debtors is at Fil. #195 and it identifies the documents being withheld as:

1. Ruby Properties 2006, 2007, 2008 and 2009 Tax Information;

2. Basler Creditors List;

3. Bankruptcy Schedules;

4. Correspondence from Domina Law Group, PC, LLO.

The correspondence was from a Domina lawyer to Dr. and Mrs. Basler regarding the Meriwether Ranch. The other documents were identified as working documents or working drafts.

The undersigned has reviewed the hundreds of documents provided by counsel for the movants at the hearing. After such review, counsel for the debtors were requested, by order, to submit the withheld documents under seal for review *in camera*. Those documents were delivered July 20, 2011. They have now been reviewed and compared to the documents for which the privileges have been waived.

A brief summary of the law concerning waiver of privileges and who has the authority in a Chapter 7 bankruptcy case to waive such privileges follows.

Federal Rule of Civil Procedure 26(b)(3) and (5) cover the work product doctrine.

Rule 502 of the Federal Rules of Evidence, entitled Attorney-Client Privilege and Work Product; Limitations on Waiver, reads:

> The following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the attorney-client privilege or work product protection.
>
> (a) Disclosure made in a Federal proceeding or to a Federal office or agency; scope of a waiver.–When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:

>> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.
>
> (b) Inadvertent disclosure.–When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Federal common law governs the privilege of witnesses in Rule 2004 exams. In re Kroh, 80 B.R. 488, 489 (Bankr. W.D. Mo. 1987).

The trustee asserts that the right to claim privileges belongs to the trustee, not the debtors. However, the law is not settled.

> While the Supreme Court has held that a trustee in bankruptcy is entitled to waive a corporate debtor's attorney-client privilege, it specifically declined to address whether or not a trustee could waive privilege on behalf of an individual debtor. Weintraub, 471 U.S. at 356, 358, 105 S. Ct. 1986. It also suggested that the rationale for its decision would not be applicable in the context of an individual bankruptcy because, "an individual . . . can act for himself; there is no 'management' that controls a solvent individual's attorney-client privilege. If control over that privilege passes to a trustee, it must be under some theory different from the one we embrace in this case." Id. at 356–57, 105 S. Ct. 1986.

In re Bounds, 443 B.R. 729, 734 (Bankr. W.D. Tex. 2010).

The Bounds court described the three approaches developed to deal with the issue of whether a trustee can waive an individual debtor's attorney-client privilege:

> According to the first approach, the right to waive the attorney-client privilege of an individual debtor passes to the bankruptcy trustee by operation of law. In re Smith, 24 B.R. 3, 5 (Bankr. S.D. Fla. 1982). Under the second, a trustee may not waive an individual debtor's attorney-client privilege. In re Hunt, 153 B.R. 445, 454 (Bankr. N.D. Tex. 1992). Finally, some courts have applied a functional approach which balances the equities and weighs the trustee's need for the information against the harm disclosure would cause to the debtor. In re Miller, 247 B.R. 704, 710 (Bankr. N.D. Ohio 2000).

Id. The court went on to adopt the second approach, finding that in the absence of clear guidance from the Bankruptcy Code, a debtor's rights must be determined by analogizing them to the rights the debtor could exercise outside of bankruptcy, just as the Supreme Court did in Weintraub. However, because the role of a trustee for a corporate debtor is significantly different from the role of a trustee in an individual's bankruptcy case in that a trustee in an individual case has no managerial role or control of the debtor, the debtor's attorney-client privilege cannot pass to the trustee to be waived by him. Id. at 734-35.

In the Eighth Circuit, the only court to have addressed the issue adopted a balancing approach in the narrow factual situation of a case converted from Chapter 11 to Chapter 7, holding that an individual Chapter 11 debtor in possession is a fiduciary for the bankruptcy estate and assumes essentially all of the rights and responsibilities of a trustee, so when the case was converted to Chapter 7, the nature of the powers was the same and the Chapter 7 trustee succeeded to the DIP's power to assert or waive the attorney-client privilege. Ramette v. Bame (In re Bame), 251 B.R. 367, 373-74 (Bankr. D. Minn. 2000).

I conclude, with regard to the issue raised by the trustee, that in an individual Chapter 7 case, the individual does not give up the privilege to the bankruptcy trustee and the individual debtor, with regard to his papers, has the authority to waive the attorney-client privilege and the work product privilege. That being the case, the issue is whether the privileges were waived as a result of the disclosure.

Concerning whether the debtors have waived the privileges, a client may waive the attorney-client privilege either expressly or by implication. Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985).

A disclosure made in a federal proceeding does not waive an attorney-client or work product privilege if the disclosure was inadvertent. Fed. R. Evid. 502(b)(1). Instances where a party unintentionally or involuntarily discloses privileged communications to an opposing party during discovery do not waive the privilege if the privilege-holder took reasonable steps to prevent disclosure and correct the error. In re Royce Homes, LP, ___ B.R. ___, 2011 WL 873428, at *11 (Bankr. S.D. Tex. Mar. 11, 2011); Fed. R. Evid. 502(b).

With regard to the attorney-client privilege, the party seeking to assert the privilege bears the burden of establishing the elements of the privilege. Ramette v. Bame (In re Bame), 251 B.R. 367, 372 (Bankr. D. Minn. 2000).

With regard to the work product privilege, the party opposing the privilege and seeking to establish waiver bears the burden of persuasion on the issue of waiver. Monsanto Co. v. Aventis Cropscience, N.V., 214 F.R.D. 545, 546 (E.D. Mo. 2002).

The party asserting the privilege bears the burden of establishing that a waiver, by disclosure or otherwise, did not occur. Seger v. Ernest-Spencer Metals, Inc., 2010 WL 378113, at *5 (D. Neb. Jan. 26, 2010); Kansas-Nebraska Natural Gas Co. v. Marathon Oil Co., 109 F.R.D. 12, 20 (D. Neb. 1985). To ascertain whether a waiver was voluntary and intentional,

> the court undertakes a five-step analysis of the unintentionally disclosed document to determine the proper range of privilege to extend. These considerations are (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in

  view of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interest of justice would be served by relieving the party of its error.

Seger, 2010 WL 378113 at *6 (quoting Gray v. Bicknell, 86 F.3d 1472, 1483-84 (8th Cir. 1996)). See also Pucket v. Hot Springs Sch. Dist. No. 23-2, 239 F.R.D. 572, 586 (D.S.D. 2006).

  The Seger court found that a waiver had occurred because the only evidence of precautions taken to prevent inadvertent disclosure was the disclosing party's reliance on one of its law firms to ascertain and sort out what was privileged, which is an insufficient basis on which to find inadvertent disclosure. Id. Moreover, the party waited nearly six months after the disclosure to make a claim of privilege, and then only as to two of the numerous documents produced. At no point did it seek court assistance in protecting its privilege by filing a motion for protective order.

  In contrast, the Kansas-Nebraska court held that mere inadvertent production does not waive the privilege, particularly when the subject is one document among more than 75,000 produced. The court stated:

  Even though the [evidence] does not go into detail as to how this particular document "slipped through the cracks" in K N Energy's procedures which he describes for reviewing possible privileged documents which were covered by the request, I am satisfied that, in view of the number of documents involved, and the procedural screening employed, the failure to catch this particular document prior to its production was in all probability not a deliberate act, or even the result of a conscious but erroneous decision.

109 F.R.D. at 21.

  "The general rule that a disclosure waives not only the specific communication but also the subject matter of it in other communications is not appropriate in the case of inadvertent disclosure. . . . In a proper case of inadvertent disclosure, the waiver should cover only the specific document in issue." In re Hechinger Inv. Co. of Delaware, 303 B.R. 18, 26 (D. Del. 2003). The rule applies unless it is apparent that a party is attempting to gain an advantage or unfairly use the disclosure. Id. In other words, "while there is no question [the disclosing party] opened the gate by inadvertently producing the [documents], defendants are not entitled to drive a bulldozer through it. Id.

  With regard to work product, privilege is waived only as to those documents produced, not as to other documents of the same character. St. Paul Reinsurance Co., Ltd. v. Commercial Fin'l Corp., 197 F.R.D. 620, 639 (N.D. Iowa 2000).

  At no time during this discovery dispute has the counsel for the debtors informed counsel for the movants or the court what steps were taken to prevent an inadvertent disclosure. The burden is upon counsel for the debtors to present sufficient evidence to persuade the court that appropriate steps were taken to protect privileged documents from disclosure. Since there is no evidence on that point, debtors have failed to meet their burden. I find that the disclosure of the documents was not inadvertent. The four documents being withheld after the fact were included in the boxes of documents that were voluntarily made available for review. As mentioned above, the hundreds of documents submitted into evidence at the hearing were also of the type that would be

covered by the privileges and there is no evidence that any actions were taken to protect any of them from disclosure.

I also find that the disclosed and undisclosed documents concern the same subject matter. Fil. #198 contains Ruby Properties 2006, 2007, 2008 Tax Information in a different format than the Ruby Properties 2006, 2007, 2008 and 2009 Tax Information contained in Line 1 of the Privilege Log. Fil. #199 is a document entitled "Basler Creditors List" which appears to have been a working document quite similar to the withheld document at Line 2 of the Privilege Log. Fil. #200 is a working draft of the bankruptcy petition and schedules dated August 11, 2010, for a proposed Chapter 11 filing. The bankruptcy schedules working draft shown on Line 3 of the Privilege Log is undated, but its contents are not dissimilar to the document at Fil. #200. Fil. #201 contains 48 pages of letters, notes, and email to and from the Domina Law Office, the debtors and Mr. Biggs' office. Many of them deal with strategy and/or tactics concerning how to approach creditors with regard to resolving the financial difficulties Dr. and Mrs. Basler found themselves in. The correspondence from Domina Law Group to Dr. and Mrs. Basler regarding Meriwether Ranch listed at Line 4 on the Privilege Log is the first of many similar items of correspondence between the parties.

To summarize, I find that the disclosure of the documents listed on the Privilege Log was not inadvertent, but was intentional. I find that the individual debtors in this Chapter 7 case retained the privilege and it did not pass to the Chapter 7 Trustee. I find that the documents listed on the Privilege Log concern the same subject matter as the disclosed documents. I further find that the documents listed on the Privilege Log ought, in fairness, to be considered together with the other disclosed documents.

IT IS ORDERED that the motion to compel discovery, Fil. #162, is granted.

If this order is not appealed, I request that a representative of the Domina Law Group retrieve the documents, in their original envelope, from the Clerk of the Bankruptcy Court no later than 20 days following the filing of this order.

DATED:    July 26, 2011

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
Brian Jorde            Albert B. Kerkhove
Robert J. Becker       Thomas D. Stalnaker
Jerry L. Jensen        *Krista Kester
Richard Garden         Joel Lonowski
Robert Creager         Trev Peterson
Victor Covalt          U.S. Trustee

* Movant is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.